1  LITIGATION & ADVOCACY GROUP
   Glenn A. Murphy (SBN: 255994)
2  gamurphy2@gmail.com
3  4215 Tierra Rejada Road, Suite 197
   Moorpark, California 93021
4  Tel: (310) 743-6438
5
6  Attorneys for Plaintiff
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10
11

| | |
|---|---|
| KENNETH RUZ, | Case No: CV10-07620 SJO (SSx) |
| Plaintiff, | HON. S. JAMES OTERO |
| v. | **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND TO STATE COURT** |
| ZIMMER, INC., *et al.*, | |
| Defendants. | Hearing Date: December 6, 2010<br>Time: 10:00 a.m.<br>Courtroom: 1, 2nd Floor<br>312 North Spring Street<br>Los Angeles, CA 90012<br><br>Complaint Filed:   May 27, 2010 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiff hereby submits the following Reply memorandum in support of plaintiff's Motion to Remand [Doc. 21].

---
REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. OVERVIEW OF MOTION AND OPPOSITION

Remand of this case is not a difficult matter, and it does not depend on a complicated product liability discussion such as presented in defendants' Opposition. [Doc. 22.]  This is because defendants have known since the complaint was served the facts they supposedly just discovered.  The complaint alleges, hence defendants knew, this is a serious case with amounts in controversy greater than $75,000.  Next, from the complaint defendants knew that Zimmer-Cook Associates, Inc., their California corporation, distributed the defective implants.  Because defendants knew the high value and that valid claims were made against the California distributor, defendant's removal was untimely.   Their Opposition is false in stating this "newly discovered" information came from plaintiff's medical records; it was right in the complaint all the while.

Since defendants' removal was beyond the thirty (30) day limit, and since the supposedly new facts were not new at all but in the complaint, defendants' removal to federal court was in bad faith and a stunt to get this case out of California.

## II. DEFENDANTS' REMOVAL WAS UNTIMELY

The Opposition has lengthy legal discussions, most of which inaccurately summarize the law.  But regardless, in discussing the law on potential liability of a distributor, the Opposition misses the mark.  Because of the allegations in plaintiff's complaint, defendants have no valid excuse for an untimely removal.

Of crucial importance is that if the removal was untimely, then no other arguments or discussion are necessary.

Next, the issues on remand are factual, and the facts show defendants' removal was untimely, an outrageous trickery, meritless, and thus plaintiff is entitled to fees for this motion.  District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  28 U.S.C. § 1332(a).  A defendant has only thirty (30) days to

1  remove, a time defendants clearly exceeded.  28 U.S.C. § 1446(b) mandates that a
2  defendant desiring to remove have a limited time to do so, that "The notice of
3  removal . . . shall be filed within thirty days after the receipt by the defendant . . . of
4  an other paper from which it may first be ascertained the case is one which is or has
5  been removable . . . ."  28 U.S.C. § 1446(b).

6        To get around being untimely, defendants' Opposition falsely claims
7  defendants only found out the facts entitling them to remove the case until after the
8  thirty (30) days expired.  The Opposition claims two newly discovered facts.  The
9  most important, according to defendants, is that "damages likely exceeded $75,000,
10 as required by 28 U.S.C. § 1332(a)."  (Opposition ("Opp."), 5:25 [Doc. 22].)
11 Defendants claim as a second and less important ground that until receipt of
12 plaintiff's medical records the defense did not know "which entity facilitated the
13 same of plaintiff's implant." (Opp., 5:7.)  Each of these claims is examined below;
14 each is clearly specious.

### III. DEFENDANTS' FALSE CLAIMS THAT THEY DID NOT KNOW THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

17       To salvage a hopelessly late removal, defendants fabricated a late discovery of
18 information.  Fortunately the fabrications in the Opposition are easily proven.

19       According to the defendants' Opposition, one key fact permits their late
20 removal.  Their Opposition writes:  "More importantly, Plaintiff's medical records
21 confirm his damages likely exceeded $75,000 . . . "  (Opp. 5:24 [Doc. 22].)
22 Defendants' claim of newly discovered information about the value of this case
23 depends on their paralegal's declaration about medical records; the declaration is
24 worth examining for it shows fabrications.  In truth, the defendants knew this was a
25 case over $75,000 all along.

26       Paralegal Bonnie Fishman, declares she looked at medical records and
27 determined that plaintiff received implants (1) "in both his hips" and was (2)
28 "continuing to experience bilateral hip pain more than two years" later:

> 4. . . . I reviewed medical records . . . Mr. Ruz.was implanted . . . in both his left and right hips at . . .[and] Plaintiff was continuing to experience bilateral hip pain more than two years after implants . . . .

(Ex. 1, ¶ 4 to Defendants' Notice of Removal [Doc. 1].)

Supposedly, from Fishman, defendants determined "the amount in controversy exceeds $75,000." (Opp., 5:25 – 6:7 [Doc. 22].) This is false; plaintiff's complaint alleges what paralegal Fishman supposedly discovered. Paragraphs 7 and 8 of the complaint explain that plaintiff had (1) defendants' implants in both hips and (2) he was continuing to suffer crippling pain due to the implants. The allegations read thusly:

> 7.     On March 13, 2008, in the State of California, Plaintiff had surgery that **implanted into the right hip** of his body a Zimmer acetabular cup for total hip replacement . . . Thereafter, on June 26, 2008, **Plaintiff had a second surgery where another Durom Cup was implanted in his left hip**. . . . .
>
> 8.     Following the surgeries, Plaintiff has suffered and **continues to suffer crippling pain, physical injuries and distress due to** the **defective Zimmer Durom Resurfacing System in his hips**. . . .

Defendants themselves admitted that they knew these cases are far beyond the jurisdictional minimum of $75,000, which they admitted in Defendants' Notice of Removal [Doc. 1], which states in pertinent part:

> 45.     **In similar cases,** where the alleged injury is related to a failed hip replacement, **verdicts and settlements indicate damages exceed $75,000**. See *White v. Hotchner*, . . . (**$557,982** arbitration award for negligent hip replacement; **$250,000 settlement** with manufacturer . . .; *Nevins v. Dhiman* . . . ($872,000 settlement in . . . hip replacement surgery); *Rupp v. Sulzer Orthopedics, Inc.*, . . . **$15.5 million judgment** against hip implant manufacturer . . . and punitive damages of **$7.15 million**).

(Defendants' Notice of Removal [Doc. 1], p. 12, ¶ 45, emphasis added.)

Since defendants knew from plaintiff's complaint and their own extensive research that this case had in controversy more than $75,000, defendants were required to remove within the statutory thirty (30) days pursuant to 28 U.S.C. § 1446(b), and their failure to do so makes their removal improper. With improper removal, this motion for remand should be granted.

Defendants' untimely removal is fatal to their opposition to remand.

## IV.   DEFENDANTS' FALSE CLAIMS THAT ZIMMER-COOK WAS FRAUDULENTLY NAMED AS A DEFENDANT

### A.   OVERVIEW

A strong argument requires no repetition; indeed repetition underscores a fundamentally weak argument. Defendants' Opposition states twenty-eight (28) separate times that the California company, Zimmer-Cook Associates, Inc. (herein "Zimmer-Cook") was "fraudulently named." Defendants are dead wrong on (1) the facts since plaintiff pleaded Zimmer-Cook's involvement, and (2) the law on when a case should be remanded. It is mean spirited for defendants to write Zimmer-Cook was fraudulently named, when these defendants have repeatedly lost all motions for remand in this court based on identical arguments. These defendants always argue Zimmer-Cook was "fraudulently named," and these arguments have always lost.

### B.   PLAINTIFF ALLEGED ZIMMER-COOK IS A DISTRIBUTOR

Crucially, the Opposition ignores plaintiff's complaint that alleged Zimmer-Cook was a distributor and involved in the manufacturing process:

> 7.   . . . during the surgeries on March 13, 2008 and June 26, 2008, Zimmer Cook Associates, Inc. representative Roger Probasco was present to participate in and supervise the surgeries so as to ensure proper placement and implantation techniques of the Zimmer Durom Hip Resurfacing System.
>
> 8.   . . . The Durom Cups were distributed and sold to Plaintiff and/or his physicians in the State of California through . . . distributor Zimmer Cook Associates, Inc. and Zimmer Cook representative Roger

> Probasco, who at all times herein mentioned knew of the defects in the Zimmer devices, all as alleged hereinafter.

(Complaint, ¶¶ 7-8, Ex. "1" to Plaintiff's Request for Judicial Notice [Doc. 21-2].)

These allegations allege precisely what defendants claim they did not know, that Zimmer-Cook is being sued as a "distributor," that Zimmer-Cook "participated in the surgeries" and "knew of the defects in the Zimmer devices." Therefore, since defendants knew the facts alleged, it is false and an attempt to mislead this Court for defendants' Opposition to claim they did not "have information sufficient to confirm which entity" distributed or "facilitated" the "sale of Plaintiff's implant." (Opp., 5:6 [Doc. 22].) In truth defendants knew all along that Zimmer-Cook was being named as a distributor, and distributors are subject to liability under California's product liability laws. Defendants also knew, from the outset, that plaintiff claimed Zimmer-Cook was an active participant in plaintiff's implants.

## V. DEFENDANTS' OPPOSITION IGNORES THE LAW ON REMAND

### A. THE PRESUMPTION AGAINST FRAUDULENT JOINDER

As held in *Plute v. Roadway Package System, Inc.* 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001), "There is a presumption against finding fraudulent joinder" and defendants carry "a heavy burden of persuasion." Also, see *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir. 1989) where the court explained that the party seeking removal has the burden of establishing federal jurisdiction, and that burden is not taken lightly. As explained in *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 685 (9th Cir. 2006), there is a "strong presumption against removal jurisdiction."

Defendants have not shown plaintiff cannot state a cause of action under California law. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). So long as there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant, courts should deny claims of fraudulent joinder. *Plute, supra,* 141 F.Supp.2d at 1012. Here, plaintiff wins if his allegations are true.

Defendants' Opposition has only one argument about Zimmer-Cook, that it

was not a distributor at all, but merely "facilitated" the sale of the defective implants. These mere allegations are insufficient to overcome the presumption against "fraudulent joinder," especially when many other cases in this district against Zimmer-Cook were all remanded to state court. Defendants cannot claim all these allegations against Zimmer-Cook were all fraudulent, and all remands were wrong.

### B. DISPUTED QUESTIONS OF FACT ARE RESOLVED WITH REMAND

The law is clear, "all disputed questions of fact and all ambiguities in the controlling state law," as well as doubts concerning the sufficiency of the cause of action due to unartful, ambiguous, or technically defective pleading, must be resolved in favor of remand. *Plute, supra,* 141 F.Supp.2d at 1008. In analyzing the Complaint, courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994); see *Little v. Purdue Pharma,* LP, 227 F.Supp.2d 838, 847, n. 12 (S.D. Ohio 2002) ("in light of the heavy burden on defendants to show the non-diverse defendants were fraudulently joined . . . finding of fraudulent joinder should not be based on factual deficiencies within the pleadings which are correctable by amendment").

In sum, all doubts, disputed questions of fact, and ambiguities in state law must be resolved in favor of the non-moving party. *Plute, supra,* 141 F.Supp.2d at 1005.

### C. THERE IS NO FEDERAL DIVERSITY JURISDICTION BECAUSE ZIMMER-COOK, A PROPERLY JOINED DEFENDANT, IS A CALIFORNIA CITIZEN.

Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." As such, diversity exists only if no opposing party is a citizen of either state. *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co*., 465 F.2d 489, 491-492 (9th Cir. 1973). Zimmer-Cook's California citizenship is undisputed.

Nonetheless, the defendants argue Zimmer-Cook's citizenship should be

disregarded because (1) Zimmer-Cook submitted a self-serving declaration that it did not market or distribute Durom Cups (which contradicts plaintiff's complaint); and (2) "Plaintiff did not specifically allege any wrongdoing on the part of Zimmer-Cook." (Opp., 4:11 [Doc. 22.])  This is a completely fabricated statement; plaintiff's complaint specifically alleges wrongdoing, that "Zimmer Cook representative Roger Probasco, who at all times herein mentioned knew of the defects in the Zimmer devices . . ." (Complaint, ¶ 8, Ex. "1" to Request for Judicial Notice [Doc. 21-2].)  It is unfortunate when attorneys misrepresent the contents of a pleading, for our courts must rely on accurate summaries of long legal documents.  Defendants falsely represented that no wrongdoing was alleged in the complaint.

### D. ZIMMER-COOK IS A DISTRIBUTOR UNDER CALIFORNIA LAW

Plaintiff states viable claims against Zimmer-Cook because California law permits strict liability actions against distributors of defective products. *Bostick v. Flex Equipment Co., Inc.,* 147 Cal.App.4th 80, 88 (2d Dist. 2007).  In a failed attempt to avoid liability defendants label Zimmer-Cook a mere "service provider." (Opp., 8:7 [Doc. 22].)  However, Zimmer-Cook admits to facilitating the distribution of the Durom Cup in California.  (Declaration of Gary Cook ("Cook Decl."), ¶¶ 3, 16, Ex. "2" to Notice of Removal [Doc. 1].)  More importantly, Zimmer-Cook admits its representatives are sometimes present at surgery to deliver the devices. (Cook Decl., ¶13, Ex. "2" to Notice of Removal [Doc. 1].)  While defendants dispute plaintiff's allegations that Zimmer-Cook made representations regarding the safety and efficacy of the Durom Cup, all disputed issues of fact must be resolved in favor of remand.  *McCabe, supra*, 811 F.2d at 1339; Cook Decl., ¶13-14.  There is, therefore, little question that plaintiff has asserted viable claims based on good faith allegations against Zimmer-Cook.

### E. CALIFORNIA LAW APPLIES STRICT LIABILITY PRINCIPLES TO DISTRIBUTORS OF DEFECTIVE PRODUCTS

*Vandermark v. Ford*, 61 Cal.2d 256 (1964), applied strict liability principles to

retailers "engaged in distributing goods to the public." *Id*. at 262. The court found distributors to be "an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Ibid*. From a public policy standpoint, applying strict liability "serves as an added incentive to safety" because distributors "may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer." *Id*. at 262-263. To that end, "strict liability on the manufacturer and [distributor] alike affords maximum protection to the injured plaintiff and works no injustice to the defendants." *Ibid*. Such an added safety measure may prove critical where, as here, a defective product could result in serious pain and suffering.

Following *Vandermark's* reasoning, see e.g. *Anderson v. Owens-Corning Fiberglass Corp.,* 53 Cal.3d 987, 994 (1991) (extended strict liability for failure to warn to distributors of defective product); *Jimenez v. Superior Court,* 29 Cal.4th 473, 477-78 (2002) (distributors and suppliers strictly liable for injuries caused by defective products); *Cronin v. J.B.E. Olson Corp*., 8 Cal.3d 121, 130 (1972) (citing *Vandermark*); *Bostick, supra*, 147 Cal.App.4th at 94 (plaintiff not required to prove negligence of distributor because strict liability applies).

Federal courts applying California law also hold distributors strictly liable for defective products and failure to warn, even in the context of medical devices, and have remanded similar cases against Zimmer-Cook. See *Milla, et al. v. Zimmer, Inc*., et al., C.D. Cal. Case No. 09-cv-6432, Doc. 24 (Nov. 4, 2009); *Lyles v. Zimmer*, *Inc*., et al., E.D. Cal. Case No. 09-cv-0479, Doc. 15 (May 29, 2009); *Hinds v. Zimmer, Inc.*, et al., E.D. Cal. Case No. 09-cv-0442, Doc. 16 (June 1, 2009); *Rickman v. Zimmer US, Inc., et al*., W.D. Tex. Case No. A-08-CA-860-LY (May 21, 2009).

**F.    THE COMPLAINT ALLEGES ZIMMER-COOK IS A PROPER DEFENDANT**

Plaintiff has connected Zimmer-Cook to his injuries. But even so, defendants half-heartedly attempt to attack the pleadings in this case. Defendants assert plaintiff makes no specific allegations with regard to Zimmer-Cook's wrongdoing. (Opp.,

4:11 [Doc. 22].) To the contrary, the plaintiff's complaint, particularly in light of California's liberal pleading standard, sufficiently alleges damages from Zimmer-Cook's wrongful conduct. California's liberal pleading standards means a complaint must only contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." Cal. Code Civ. Pro., § 425.10(a)(1). This standard is met with general allegations of ultimate fact. *McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1469-1470 (2006). So long as the complaint apprises the defendant of the factual basis for the claim, the allegations are sufficient. *Ibid.*

      Although the full extent of Zimmer-Cook's involvement will be illuminated in discovery, the complaint provides a reasonable and adequate starting point and a sufficient basis for establishing Zimmer-Cook's role in the chain of distribution of plaintiff's Durom Cup. Specifically, plaintiff alleges: "At all relevant times, Zimmer-Cook sold, marketed, distributed and/or otherwise placed the Durom Cup into the stream of commerce." (Complaint, ¶¶ 2, 7, Ex. "1" to Request for Judicial Notice [Doc. 21-2].)

      Additionally, "ambiguity does not establish fraudulent joinder because any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand." *Blakely v. Bayer Corp.*, C.D. Cal. Case No. 2:09-cv-09420-PSG-RC, Doc. 44 at p.5 (March 10, 2010) citing *Plute, supra*, 141 F.Supp. 2d at 1008. Notwithstanding, plaintiff makes clear throughout the Complaint that Zimmer-Cook engaged in wrongful conduct and caused his crippling injuries. (Complaint, ¶¶ 6, 7, 8.) Plaintiff further alleges Zimmer- Cook's wrongful acts and omissions proximately caused his injuries. Taken together, it is clear plaintiff has properly pled a cause of action against Zimmer-Cook.

### G.    ZIMMER-COOK CANNOT PROVE FRAUDULENT JOINDER

Defendants rely almost exclusively on a declaration submitted by Gary Cook of Zimmer-Cook. (Ex. "2" to Notice of Removal [Doc. 1].) The declaration admits to distributing Durom Cups in California, but denies that Roger Probasco serviced

1  Plaintiff's physician, Dr. Kevin Bozic.  (Cook Decl. ¶16, Ex. "2" to Notice of
2  Removal [Doc. 1].)  From this, defendants conclude there can be no liability for
3  Zimmer-Cook's Mr. Probasco.  But plaintiff alleges otherwise, and claims Mr.
4  Probasco was in fact present and assisted in surgeries.  However, even if he was not,
5  this does not conclusively prove Zimmer-Cook played absolutely no part in the chain
6  of distribution to plaintiff and plaintiff's physician.  Defendants' facts do not prove
7  plaintiff's implant did not come from Zimmer-Cook through an intermediary
8  company or that some other employee of either Mr. Probasco or Zimmer-Cook was
9  present and was active in distributing a knowingly defective product.

10         Furthermore, given Zimmer-Cook's admitted role in marketing and promoting
11 the Durom Cups in California, it is disingenuous to say Zimmer-Cook did nothing to
12 distribute, market or facilitate the sale.  Zimmer-Cook marketed and promoted the
13 Durom Cup to physicians and patients in California through its web site, physician
14 education seminars and promotional brochures.  Moreover, Zimmer-Cook is so
15 closely aligned with Zimmer's interests that they share a company logo and appear to
16 be one and the same company.  Additionally, the very name "Zimmer" when
17 connected with "Cook," implies a close corporate connection that plaintiff fully
18 intends to prove with evidence developed in discovery.  Defendants will not be able,
19 forever, to stop plaintiff's discovery rights with more frivolous objections.  By all
20 outward appearances, Zimmer-Cook is the California marketing arm of Zimmer.

21         It is undisputed that Zimmer-Cook sold Durom Cups in California and
22 marketed the Durom Cup to California physicians. Importantly, "all disputed
23 questions of fact" must be decided in favor of remand. *Plute, supra*, at 1008. To that
24 end, this case should be remanded so Plaintiff may conduct full discovery into the
25 chain of distribution to prove Zimmer-Cook's involvement.

26 Dated: November 22, 2010

                                By:   */S/ Glenn A. Murphy*
27                                    Glenn A. Murphy
28                                    Attorneys for Plaintiff

---
11
REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT